# ALFRED DONNELL HUGHES *v.* STATE OF MARYLAND

[No. 122, September Term, 1979.]

*Decided August 12, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Nancy Louise Cook, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. MURPHY, C. J., and RODOWSKY, J., dissent. MURPHY, C. J., filed a dissenting opinion at page 230 *infra,* in which RODOWSKY, J., concurs.

We are concerned in this case with the interplay between Maryland Rule 724 stating, with exceptions not here applicable, "[t]he defendant shall be present at every stage of the trial" and Rule 746 b providing that once a trial date in a criminal case has been set any change of date must be "[u]pon motion of a party made in writing or in open court and for extraordinary cause shown [to the satisfaction of] the county administrative judge or a judge designated by him . . . ." In this case appellant Alfred Donnell Hughes was not permitted to appear with counsel at a hearing before the administrative judge to determine whether or not a continuance should be granted. We assume, arguendo, that the hearing was not a "stage of the trial" within the purview of Rule 724. However, because we are of the view that under the facts and circumstances of this case fundamental fairness required that Hughes be present at this particular hearing, we shall reverse the judgment of the Court of Special Appeals in *Hughes v. State,* 43 Md. App. 698, 407 A.2d 330 (1979).

The facts are relatively simple. Hughes was tried in the

Criminal Court of Baltimore on numerous charges. The indictments were returned on April 13, 1978. The appearance of an assistant public defender was entered on his behalf on May 22, 1978. At that time Hughes entered a plea of not guilty and executed the form prescribed by Rule 735 on which he elected a jury trial. A number of weeks prior to September 13, 1978, trial was scheduled for that date. On the morning of September 13 the assigned attorney for Hughes advised the court that on that morning he had been approached by a private attorney; that the private attorney indicated that he had been contacted by the family of the defendant; that the family said they desired to employ that private attorney and were in a financial condition to do so; and that assigned counsel had spoken that morning to Hughes' mother who confirmed the fact that she had indeed talked to the private attorney and had finally been able to marshal her resources so as to be able to retain that private attorney. Counsel said Hughes had been advised of these developments and indicated that he wished to be represented by the private attorney who was the choice of his family. Accordingly, a motion for a continuance was made. The trial judge asked if this was the first time assigned counsel had known about the matter. He replied in the affirmative, stating that the private attorney apparently had just been so advised and that this private attorney was "obviously in no position to represent Mr. Hughes [that day] on these very serious charges." Counsel indicated that the private attorney had certain conflicts of schedule, but as soon as he possibly could he would represent Hughes.

Maryland Rule 746 a as it then existed stated: [1]

a. *General Provision.*

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance

---

1. On November 16, 1979, subsequent to our decision in State v. Hicks, 285 Md. 310, 403 A.2d 356 (1979), we amended this rule, effective immediately, to change the required trial date to not later than 180 days.

On July 3, 1980, we amended Rule 746 b so that for a change of trial date good cause rather than extraordinary cause must be shown. This was in accord with recently enacted legislation.

--- Provision for or Waiver of Counsel), a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel).

b. *Change of Trial Date.*

Upon motion of a party made in writing or in open court and for extraordinary cause shown, the county administrative judge or a judge designated by him may grant a change of trial date.

Pursuant to that rule the trial judge stated that he had no authority to grant or deny a postponement and suggested to counsel that they see the administrative judge immediately. Whereupon counsel for Hughes said to the court:

MR. LIBOWITZ: Your Honor, on the record, since — before my client is taken away, I think, as far as my client is concerned, postponement request is certainly a critical stage in the proceedings against him. It has been indicated, the family has indicated that at this time they are financially able to secure private counsel of their own choice and desirous of same. I would ask that my client be in a position to be present during any postponement request before the administrative judge.

The trial judge indicated he would "leave that up to the jail guard." Thereafter counsel returned to the courtroom and reported relative to the hearing before the administrative judge on the issue of postponement. The assistant State's attorney said:

Your Honor, Judge Karwacki denied the postponement. Mr. Libowitz and Mr. Carey and myself met with him about fifteen, twenty minutes ago. The situation was made known to him. He denied both postponement requests by both Defendants and ordered that the case proceed to trial today. He also denied a motion made by Mr.

Carey, Mr. Libowitz to have the Defendants present at the hearing of the request and on the postponement issue.

(Mr. Carey was at that time an assistant public defender who was representing Hughes' codefendant.) Counsel for Hughes added:

I would indicate, Your Honor, that the reasons for the postponement were as indicated to the Court on the record, the Court here.

The case proceeded to trial before a jury. Hughes was found guilty of two counts of assault with intent to murder, two counts of use of a handgun in the commission of a crime of violence, robbery with a deadly weapon, kidnapping, and unlawfully carrying or transporting a handgun. It is the contention of Hughes that the hearing before the administrative judge was a stage of the trial within the meaning of Rule 724 and thus that the defendant was entitled to be present.[2]

The Court of Special Appeals affirmed because of the absence of a record of that which transpired before the

---

**2.** Rule 724 states:

a. *When Presence Required.*

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules.

b. *When Presence Not Required.*

A defendant need not be present:

1. At a conference or argument on a question of law;

2. When a *nolle prosequi* or stet is entered pursuant to Rule 782 (*Nolle Prosequi* and Stet).

3. At a reduction of sentence pursuant to Rule 773 (Sentence — Review) or Rule 774 (Sentence — Revisory Power of Court);

4. At any stage of the proceedings if the defendant is a corporation.

c. *When Presence Waived.*

A defendant initially at trial waives his right to be present when:

1. He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his right to remain during trial; or

2. He engages in conduct to justify his being excluded from the courtroom.

administrative judge. It pointed out that in *Langrall, Muir & Nopp'r v. Gladding,* 282 Md. 397, 401, 384 A.2d 737 (1978), we had said, "[I]t is the responsibility of the aggrieved party, the party claiming abuse, to preserve his objection for review." However, by way of what was termed "dicta," Judge Lowe said for that court, "[I]t would seem that an extraordinary cause hearing may be considered of such importance — especially with regard to the underlying purpose — that it would at the very least be sufficiently critical to require appellant's presence under Maryland Rule 724 a." He went on to note for the court:

> We are apprised that the Supreme Bench of Baltimore City has adopted the post-*Hicks* administrative policy of requiring *all* defendants to be present at *all* requests for scheduling change under Md. Rule 746. While this cumbersome procedure, which obviously causes security and other problems, is questionable, that court has taken *Hicks* as a warning flag, and chosen not to jeopardize future proceedings with technical oversights. [*Id.* 43 Md. App. at 711 (emphasis in original).]

(The reference is to *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979).) It would appear in the light of the procedure reported by the Court of Special Appeals relative to cases in Baltimore City that the problem presented in this case would not arise there today.

In this instance we believe the request by counsel to the trial judge, which we have previously quoted, and the report back of the proceedings before the administrative judge provide sufficient record of the request on behalf of Hughes and the denial of that request for appellate review.

Maryland has long recognized the common law right to be present at trial and to be confronted by one's accusers. For instance, in *Johns v. State,* 55 Md. 350 (1881), the Court rejected a defendant's contention that the admission of a Comptroller's certificate showing the amount in which defendant had defaulted as a state tax collector violated his

right of confrontation. In so doing Judge Alvey articulated the gist of the right for the Court:

> It is only where the prosecution is to be maintained by the testimony of living witnesses that they are required to be produced in court, confronted with the accused, and deliver their testimony under the sanction of an oath, and be subject to cross-examination. In other words, no witness shall give his testimony in secret, or out of the presence of the accused; and no party shall be put upon his trial upon mere hearsay evidence; but the witness shall be produced, and be subject to all the tests that the law has devised for the full disclosure of the truth. [*Id.* at 360.]

In *Dutton v. State*, 123 Md. 373, 91 A. 417 (1914), the Court based its observation that "[u]nder no circumstances should a trial be so conducted as to have the appearance of a Star Chamber proceeding" on Maryland Declaration of Rights, Art. 21. Chief Judge Boyd there explained for the Court the purpose of the provision:

> It is quite possible that one on trial may be able to make valuable suggestions to his attorney during the examination of witnesses, — particularly the prosecuting witness in a case of this kind, — as it matters not how well an attorney may have prepared for the trial of a case, it is impossible for him to anticipate all that may be said, or to know all the details a witness on the opposite side will testify to. It might be that in the course of her examination in the presence of the accused the prosecuting witness would discover that she had made a mistake in the identity of the party committing the crime. [*Id.* at 389.]

More recently, but prior to the adoption of Maryland Rule 775, the predecessor to our present rule, in *Midgett v. State,*

216 Md. 26, 139 A.2d 209 (1958), Judge Horney discussed for the Court the right of the defendant to be present:

> In this State there is no doubt that an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of his trial from the time the jury is impaneled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right. The constitutional guarantee includes the right of the accused to be present (i) when the jury is charged or instructed on the facts, the law or the form of the verdict, before it has begun its deliberations or afterwards upon its request or by direction of the court; (ii) when the court is repeating a charge or instruction previously given in whole or in part; (iii) when the court communicates with the jury in answer to questions propounded by the jury, or (iv) when there shall be any communication whatsoever between the court and the jury: *unless* the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury. Furthermore, the right to be present is personal to the accused and cannot be waived by his counsel. *Duffy v. State,* 151 Md. 456, 135 A. 189 (1926); *La Guardia v. State,* 190 Md. 450, 58 A.2d 913 (1948); Constitution of Maryland, Declaration of Rights, Art. 5. [*Id.* at 36-37 (emphasis in original).]

In *Bunch v. State,* 281 Md. 680, 381 A.2d 1142 (1978), citing a number of our prior cases, Judge Eldridge said for the Court:

> The right of a criminal defendant to be present at every stage of his trial is, as we have said many times, a common law right preserved by Art. 5 of the Maryland Declaration of Rights. . . . [(Citing cases.)] The right, in some measure at least, is also protected by the Fourteenth Amendment to the United States Constitution. *Faretta v. California,*

422 U.S. 806, 819 n. 15, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Illinois v. Allen,* 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). *Cf. Snyder v. Massachusetts,* 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934). Finally, the right is guaranteed by Maryland Rule 724, which provides in pertinent part that "the defendant shall be present at every stage of the trial, including the impaneling of the jury. . . ." [*Id.* at 683-84.]

In that case an accused was denied the right to be present at a bench conference during which the trial judge and counsel considered a note from one of the jurors stating that the juror was biased. The judge overruled the prosecution's motion to excuse the juror and the motion of the defense for a mistrial, holding that the juror should remain. We reversed, concluding that the accused was denied his right to be present at every stage of trial.

The extent of the right of a defendant to be present as guaranteed by the Fourteenth Amendment is expressed by Mr. Justice Cardozo for the Court in *Snyder v. Massachusetts,* 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934), that is "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge."

Ordinarily, the right to be present does not attach until the process of impaneling the jury begins. For instance, in *Veney v. Warden,* 259 Md. 437, 271 A.2d 133 (1970), we held that a pre-trial conference regarding procedures to be followed at trial, including permitting separation of the jury, was not a stage of trial. In *State v. Collins,* 265 Md. 70, 288 A.2d 163 (1972), the accused was convicted upon the basis of deposition testimony taken when he was not present. We reversed, holding that to be a stage of trial. In *Goldstein v. State,* 220 Md. 39, 150 A.2d 900 (1959), we held that when a judge gave jurors a "Handbook for Jurors" prior to the time at which they were impaneled as a jury that this was not a stage of trial at which the accused had the right to be present. The right to be present at the impaneling of the jury, however, is provided for in the rule. In *Haley v. State,*

40 Md. App. 349, 392 A.2d 551, *cert. denied,* 284 Md. 744 (1978), the Court of Special Appeals held examination of prospective jurors on voir dire at a bench conference was a stage of the trial within the meaning of the rule since "[i]t is an integral and substantial part of the process of impaneling the jury and, therefore, of the trial itself." *Id.* at 354. *See also Sewell v. State,* 34 Md. App. 691, 368 A.2d 1111, *cert. denied,* 280 Md. 734 (1977) (Conference concerning State's motion in limine requesting that the identity of an informant not be disclosed at trial was held to be exclusively a question of law and not a "stage of trial."); *Samson v. State,* 27 Md. App. 326, 341 A.2d 817 (1975) (A discussion and a decision made in chambers relative to the defendant's motion for a change of venue was a "purely legal matter[ ]" and not a "stage of trial."); *Redman v. State,* 26 Md. App. 241, 337 A.2d 441 (1975) (A pre-trial hearing on a motion to suppress physical evidence and to suppress an in court identification was held to be a "stage of trial."); and *State v. Tumminello,* 16 Md. App. 421, 298 A.2d 202 (1972) (A conference in chambers relative to the admissibility of a conversation transcribed after its interception by a wiretap was held to be a legal argument on the admissibility of evidence and not a part of the trial.).

There are circumstances in which the trial, once it has begun, may be said to be "suspended" so that the court may attend to administrative or "housekeeping" duties in connection with the trial. As Judge Eldridge pointed out for the Court in *Bunch*:

> [N]ot everything that happens in a criminal case after the jury is impaneled is deemed a "stage of the trial" at which the defendant has a right to be present. For example, in *Brown v. State,* 272 Md. 450 [, 325 A.2d 557 (1974)], we held that proceedings in the judge's chambers during a recess in the trial, at which the court and counsel agreed upon a procedure for the introduction of certain photographic evidence, was not a stage of the trial requiring the defendant's presence. And in *Martin v. State,* 228 Md. [311] at 316-317 [, 179 A.2d 865

(1962)], this Court held that argument in chambers on a motion for a directed verdict was not a "step of the defendant's criminal proceedings which requires his presence." *See,* in addition, *Brown v. State,* 225 Md. [349] at 351-354 [, 170 A.2d 300 (1961), *cert. denied,* 372 U.S. 960 (1963)] (proceedings in chambers when requests for instructions were offered). [*Id.* 281 Md. at 684-85.]

See also, for example, *Brown v. State,* 236 Md. 505, 204 A.2d 532 (1964) (Two jurors went separately to the chambers of the trial judge at the conclusion of one day of trial. Each indicated a desire to submit a question for answer. He instructed the jurors to wait until the resumption of the trial the following morning pointing out that they could then put the questions in writing and hand them to the bailiff at which time the trial judge would call counsel to the bench. The audience was thus summarily terminated by the trial judge, with no attempt to answer the questions which they posed and with no other discussion of the case. These actions were held "under the circumstances [to be] prudent and not prejudicial to the appellant"); *Tisdale v. State,* 41 Md. App. 149, 396 A.2d 289 (1979) (When court adjourned for the evening the State and the defense had completed their respective cases-in-chief and the State had indicated a desire to call one rebuttal witness. The next morning the trial judge announced that he had been informed that a juror had called to report that her child was sick and that she would not be present in court. After this he made a telephone call in the presence of counsel to determine firsthand whether or not the juror would be able to resume her duties with dispatch. The Court of Special Appeals held this "was entirely collateral to any matter pertaining to appellant's guilt or innocence, or to the fairness of his trial," hence, he had no right to be present.); and *State v. Tumminello, supra,* (A bench conference regarding the scope of cross-examination of a certain witness was held to be a legal argument only and not a part of the trial.).

As might be expected, most of the cases concerning the absence of the defendant between the time the jury retires

and the rendition of verdict involve communications between the judge and the jury. For instance, in *State v. Saul*, 258 Md. 100, 265 A.2d 178 (1970), we affirmed a reversal of a conviction by the Court of Special Appeals. It held that the delivery of a note from the jury to the judge was merely a communication and that its reception by the judge, the conference with counsel, and the agreement to give a copy of a requested statute to the jury did not amount to a part of the trial, but that the giving of a copy of the statute "was either a reinstruction or a repetition of a charge or instruction" at which the defendant had the right to be present. *Id.* at 108. In *Saul* Judge McWilliams quoted for the Court from the "able and comprehensive opinion" of Judge Orth for the Court of Special Appeals in *Young v. State*, 5 Md. App. 383, 247 A.2d 751 (1968), where he interpreted *Midgett* for that court:

> "(1) it is reversible error for the court to charge or instruct the jury trying the case, on the facts, the law or the form of the verdict at any time during the involuntary absence of the defendant [but see Maryland Rule 775], even though the charge or instruction is a repetition of a charge or instruction previously given in whole or in part, prejudice being conclusively presumed; and
>
> (2) it is reversible error for the court to communicate in any other manner with the jury trying the case, during the involuntary absence of the defendant unless the record affirmatively shows that such communication was not prejudicial or had no tendency to influence the verdict of the jury." *Id.* at 390-91. [*Id.* 258 Md. at 106.]

In *Bunch*, as previously stated, we concluded that a bench conference held in response to a juror's note indicating that he considered himself biased was a stage of the trial since it involved in a sense impaneling of the jury and thus the defendant was entitled to be present.

Here trial had not begun. No evidence was adduced as in *State v. Collins, supra*, 265 Md. 70. However, if we assume arguendo that the proceeding here was not a stage of the

trial, this would not dispose of the matter. As Chief Judge Murphy so cogently expressed it for the Court in *State v. Hicks*, 285 Md. 310, 319, 403 A.2d 356 (1979), "Determining what constitutes 'extraordinary cause' under Rule 746 [justifying a continuance] is, of course, dependent upon the facts and circumstances of each case." In *Snyder*, 291 U.S. at 106, Mr. Justice Cardozo said for the Court, "Again, defense may be made easier if the accused is permitted to be present at the examination of jurors or the summing up of counsel, for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself." That statement is no less applicable to this type of proceeding, particularly where it involved a determination as to whether a case might be continued in order that a defendant might have counsel of his choice. In the circumstances of this case the presence of the accused would not, in the words of Mr. Justice Cardozo, "be useless, or the benefit but a shadow." *Id.* at 106-07. In passing upon this motion and in determining whether "extraordinary cause" was shown, the administrative judge might well have wanted to know the bases for Hughes' expressed dissatisfaction with his designated attorney; whether an agreement as to fee had been reached between the defendant's family and the attorney allegedly hired by them; whether this fee had been paid; if not, whether the attorney had indicated his willingness to try the case prior to payment; if not, the arrangements made as to the time of payment; whether there had been ongoing negotiations between counsel and the defendant's family over a period of time or whether this was a strictly last minute hiring on the eve or morn of trial; and, in an effort to avoid inconvenience to the State, whether there could be a stipulation as to the testimony of certain witnesses. This last inquiry certainly would have required consultation by counsel with the defendant. In this instance all of the relevant information was not necessarily in the possession of the assigned attorney who was to be replaced if the defendant's request for postponement prevailed. The defendant himself might not have had all of the information which the administrative judge might have desired, but the odds are that he had more

than did his assigned attorney. Moreover, there may be some validity in Judge Lowe's observation for the Court of Special Appeals, "That an attorney being discharged would be adequate counsel to advocate his own dismissal out of client's presence and to ask for a postponement to allow his successor to prepare, is reasonably incongruous." *Id.* 43 Md. App. at 703. We conclude that under the facts and circumstances here a fair and just hearing was thwarted by the absence of the defendant.

We emphasize that we do not decide in this case that extraordinary cause for postponement was shown. We are not to be understood as even implying that a request for postponement on the morning of trial by reason of a last minute employment of private counsel constitutes extraordinary cause. Obviously, each case must stand on its own facts. Had the defendant been present at the hearing before the administrative judge, we might or might not have concluded as we did under similar, but not completely analogous, circumstances, in *Mathias v. State,* 284 Md. 22, 394 A.2d 292 (1978), that the administrative judge did not abuse his discretion. As we said in *Mathias,* citing a number of cases, "[S]ince discretionary rulings by trial judges carry a presumption of validity, the burden of establishing an abuse of discretion in a particular case lies with the appellant." *Id.* at 28. We here decide only that under the circumstances of this case fairness dictated the defendant's right to be present when the administrative judge made his determination as to whether or not any extraordinary cause was shown which would justify a continuance. Our holding goes no further.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court for passage of an order reversing the judgment of the Criminal Court of Baltimore and remanding the case for trial; the Mayor and City Council of Baltimore to pay the costs.*

230

*Murphy, C. J. dissenting:*

The Court today holds that the Fourteenth Amendment's "fundamental fairness" formulation bestows upon an accused in a criminal case a constitutional right to be present when, under Maryland Rule 746 b, the Administrative Judge determines whether to grant the defendant's motion for a postponement of his scheduled trial date to permit him to retain other counsel. The Court purports to limit its holding to the particular facts of this case, concluding that because a "fair and just hearing [on the motion for postponement] was thwarted by the absence of the defendant," his conviction must be reversed and a new trial granted. There is, however, no requirement for a hearing under Rule 746 b, much less a hearing at which the accused has a constitutional right to be present. I therefore disagree with the majority that the accused enjoys a constitutional right, either to a hearing on his motion for postponement or to be present when a determination of his motion is made. I am simply unable to glean from the majority opinion the precise reach of its application to the thousands of postponement motions made annually in the trial courts of this State — a concern certain to be shared by the trial judges of this State. I therefore dissent and briefly give my reasons.

We said in *Bunch v. State,* 281 Md. 680, 381 A.2d 1142 (1978), that in some measure at least a criminal defendant has a Fourteenth Amendment right, recognized in *Snyder v. Massachusetts,* 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934), to be present at every stage of his trial. The constitutional right announced in *Snyder,* as recently restated by the Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), is that "an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." 422 U.S. at 819 (n. 15). That a determination by a court of a pretrial postponement motion is not a "stage of the trial" within the contemplation of what is now Maryland Rule 724 a would seem to be self-evident. Indeed, the reasoning of the numerous cases of this Court cited in the

majority opinion clearly so indicate, pointing out that the rule is simply declaratory of the common law principle that an accused has a right to be present at all material stages of his trial.[1] A number of jurisdictions have specifically held that determination of the merits of a pretrial motion for a continuance is not a stage of the trial at which the accused has a right to be present. *See, e.g., State v. Scott,* 283 So. 2d 250 (La. 1973); *Parrish v. Commonwealth,* 472 S.W.2d 69 (Ky. 1971); *State v. Holmes,* 428 S.W.2d 571 (Mo. 1968); *People v. Woods,* 27 Ill. 2d 393, 189 N.E.2d 293 (1963); *Hogan v. State,* 275 P. 355 (Okla. 1929).

The majority, selectively extracting language from *Snyder v. Massachusetts, supra,* concludes — without regard to whether a ruling on a pretrial postponement motion constitutes a stage of the trial under the common law rule, or under Rule 724 a — that the accused has a Fourteenth Amendment right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." On that premise the majority reasons that because the merits of Hughes' postponement motion depended upon the particular facts and circumstances of his case, he was in a position to give advice and make suggestions to his counsel. To deny Hughes the right to be present in such an instance, according to the majority, would deny him due process of law because, in the words of *Snyder,* his presence would not be "useless, or the benefit but a shadow."

This interpretation of the breadth of the *Snyder* case, as applied to pretrial motions for continuance, is, I think, completely unwarranted and will wreak havoc with the orderly and certain scheduling of criminal cases for trial. In *Brown v. State,* 272 Md. 450, 325 A.2d 557 (1974), Judge O'Donnell, speaking for a unanimous Court, exhaustively reviewed the cases involving the accused's right to be present at every stage of his trial. We there recognized that

---

1. The historical reasons underlying the development of the common law right of presence of the accused at his trial are well chronicled in United States v. Gregorio, 497 F.2d 1253 (4th Cir. 1974), *cert. denied,* 419 U.S. 1024.

under the federal constitution, substantive testimony concerning the guilt or innocence of the defendant cannot be submitted during his involuntary absence and in violation of his constitutional right to be confronted by witnesses. We emphasized that the accused's right of presence was "at every *material* stage in the trial" (emphasis in original), 272 Md. at 458, and we discussed at length the constitutional aspects of the right, as articulated in *Snyder.* We observed that *Snyder* involved a Massachusetts statute authorizing the jury to view the scene of the crime. Snyder was on trial for murder and at the opening of his trial the prosecution made a motion that the jury be allowed to view the crime scene. Snyder asked that he be permitted to accompany the jury to the scene of the crime; his motion was denied. At the crime scene, the prosecution and Snyder's counsel were permitted to point out to the jury particular features of the view, *i.e.,* the distances between points and the lighting conditions. The Court held in *Snyder* that denial of the defendant's request to accompany the jury to the scene of the murder was not a violation of his Fourteenth Amendment due process right because he could not have been of any assistance to his counsel had he been present. It was in this context, as we observed in *Brown,* that the Supreme Court stated: "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." 291 U.S. at 107-08. It was in this light that the Court said:

"We assume in aid of the petitioner that in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. Thus, the privilege to confront one's accusers and cross-examine them face to face is assured to a defendant by the Sixth Amendment.... Again, defense may be made easier if the accused is permitted to be present at

the examination of jurors or the summing up of counsel, for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself. . . .

". . . Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." 291 U.S. at 105-07.

In *Brown,* we quoted with approval from *People ex rel. Lupo v. Fay,* 13 N.Y.2d 253, 196 N.E.2d 56, 246 N.Y.S.2d 399 (1963), *cert. denied,* 376 U.S. 958 (1964), in which the New York Court of Appeals said (13 N.Y.2d at 256-57) that due process under *Snyder* "mandates the presence of a defendant at his felony trial to the extent only that his presence is necessary for a fair and just hearing of his cause and he must be deemed to have the absolute right to hear everything the jury hears . . . so that his may be the opportunity to confront his accusers and advise with his counsel." By way of placing the language in *Snyder* in proper perspective, we referred in *Brown* to the following passage from *Snyder.*

"A fertile source of perversion in constitutional theory is the tyranny of labels. Out of the vague precepts of the Fourteenth Amendment a court frames a rule which is general in form, though it has been wrought under the pressure of particular situations. Forthwith another situation is placed under the rule because it is fitted to the words, though related faintly, if at all, to the reasons that brought the rule into existence. A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his to advise with his counsel [citations omitted], and cross-examine his accusers. [Citations omitted.] Let the words 'evidence' and 'trial' be extended but a little, and the privilege will apply to stages of the cause at which the function of counsel is mechanical

or formal and at which a scene and not a witness is to deliver up its message. In such circumstances the solution of the problem is not to be found in dictionary definitions of evidence or trials. It is not to be found in judgments of the courts that at other times or in other circumstances the presence of a defendant is a postulate of justice. There can be no sound solution without an answer to the question whether in the particular conditions exhibited by the record the enforced absence of the defendant is so flagrantly unjust that the Constitution of the United States steps in to forbid it." 291 U.S. at 114-15.

The Court in *Snyder* was plainly focusing on the trial of the case and on the defendant's ability to assist his counsel in substantive matters relating to his guilt or innocence.[2] To apply the general language of *Snyder* to routine matters preliminary to trial, like a last-minute motion for a continuance to obtain new counsel, is, in my opinion, a sweepingly broad misreading of that case. The Court pointed out in *Brown* that matters unrelated to the issue of the accused's guilt, which do not involve his right of confrontation or cross-examination or bear a reasonable substantial relationship to the opportunity to defend his innocence, do not implicate his due process right to be present at every stage of the trial. The Court observed in *Brown* that by necessity conferences are held between the court and counsel "for the purpose of discussing scheduling" and "other collateral matters of procedure," at which the accused has no right to be present since such conferences "have not been held to be a part of the trial." 272 Md. at 479. Indeed, the Court said in *Brown*:

"To require that all such conferences be conducted in open court, or that the defendant be present in chambers, or at a bench conference, on each occasion would create administrative burdens, diminish

---

2. Pretrial evidentiary hearings on motions to suppress clearly fall within *Snyder's* coverage. In such instances, the issue is whether evidence pertaining to the defendant's guilt will be used against him at trial.

the decorum of the proceedings, and in many instances involve security risks — none of which can be balanced by any gain from the defendant's presence." 272 Md. at 479-80.

As heretofore indicated, there is neither a right to a hearing on a postponement motion under Rule 746 b, or under the state or federal constitutions. Nor is there anything in the facts of this case which would warrant the Court's holding that Hughes, had he been present, could have materially assisted his counsel when the Administrative Judge was determining the merits of the continuance motion.

The record discloses only that on the morning of the trial, which had been set many weeks previously, a private lawyer approached Hughes' Public Defender counsel and advised him that Hughes' family wanted to engage his services and was financially able to do so. The Public Defender contacted Hughes' mother who confirmed the fact that she had spoken to the private attorney and was financially able to retain him to represent her son. The Public Defender then conferred with Hughes who indicated his concurrence with the family's decision to retain the private counsel. There is nothing to indicate that Hughes believed his Public Defender counsel to be incompetent or otherwise unprepared to try the case. In these circumstances, to afford Hughes a constitutional right to be present when the Administrative Judge decided his motion for a postponement is just plain wrong, unsupported by *Snyder,* or any other case, which has come to my attention.

I, of course, do not disparage the importance of having counsel of one's choice, but that right must be timely exercised. A guilty accused may effectively avoid punishment if he is permitted to maneuver, carte blanche, for postponements or delay. Today's decision gives him a new tool to that end, to the great detriment of the administration of justice in this State. Because the Court's decision is premised on a constitutional right, trial courts will be reluctant to limit the rule announced today to requests for

postponements made on the day óf trial by an accused for the ostensible purpose of obtaining new counsel, and reluctant to act on the basis of a waiver by counsel of the possible right of presence of the accused. Until the limits and procedures of the rule announced today are refined by future decisions, the result will be to cast yet another burden on the operation of the criminal justice system.

Accordingly, I would affirm the convictions in this case. Judge Rodowsky has authorized me to state that he concurs with the views expressed herein.