ORVILLE JOSEPH PORTER and WAYNE PRESTON
MORRIS v. STATE OF MARYLAND

[No. 74, September Term, 1979.]

*Decided January 19, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan .H. Murrell, Public Defender,* on the brief, for appellants.

*Stephen B. Caplis, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The principal issue in this criminal case is whether, during the jury selection phase of the case, conversations at the bench between the trial judge and certain prospective jurors regarding the ability of those jurors to serve beyond their scheduled term constituted a "stage of the trial" at which the defendants had a.right to be present.

The defendants, Orville Joseph Porter and Wayne Preston Morris, were each charged with a sexual offense in the first degree and were tried jointly in the Criminal Court of Baltimore. At the beginning of the jury selection process, the trial court advised the panel of prospective jurors that the trial would likely extend two days beyond the end of their scheduled term of service. The court then asked:

"[I]s there any member of the jury panel who would find it impossible to be carried over into next week? Now, that does not mean that it is not desirable because we'll contact any employer or anyone, to make arrangements for you to be carried over, but those persons who would find it impossible because of a special commitment to be here next week . . . ."

Twenty-nine members of the panel answered affirmatively. Before questioning these prospective jurors, the following took place at a bench conference between the court and defendants' counsel:

"THE COURT: This is not as to prejudice, so do you want defendants present?

"COUNSEL FOR DEFENDANT PORTER: I don't think it is necessary, Your Honor.

"THE COURT: For this purpose, perhaps not.

"COUNSEL FOR DEFENDANT PORTER: Not for this purpose.

"THE COURT: Do you agree?

"COUNSEL FOR DEFENDANT MORRIS: Yes, I agree."

Thereafter, at a bench conference attended by the defendants' attorneys but not the defendants, the court individually questioned the prospective jurors who had responded affirmatively as to why it would be impossible for them to serve the extra two days.[1] The court excused fifteen of them and refused the request to be excused of the other fourteen. The bench conference was then concluded.

Thereafter the attorney for one of the defendants made a motion to excuse, for cause, the fourteen who had not been excused by the trial court. He argued:

"I'm afraid that they may be . . . in a hurry to arrive at a proper verdict, whether it is for or against, and I think they should be excused because some of them appeared to be very angry at the Court for failing to go along with their excuse, and I must ask the Court to excuse all of those for cause."

The court denied the motion, stating that

"there are questions [to be asked] on voir dire that specifically address any reason why they couldn't render a fair and impartial verdict; they are to let

1. During this time, the defendants were seated at counsel table, out of the hearing of the conversations at the bench conference with the prospective jurors.

> me know, and if they are angry, they certainly will
> let me know, and I'll determine that issue then."

The voir dire questioning of individual prospective jurors then took place; the jury was selected and sworn, and the trial commenced. Each defendant was found guilty by the jury and, after sentencing, appealed, challenging the convictions on several grounds. The Court of Special Appeals affirmed in an unreported opinion.

This Court then granted the defendants' petition for a writ of certiorari, in which the defendants primarily argued that the questioning of the twenty-nine prospective jurors concerning their ability to serve beyond their scheduled term was a stage of the trial at which the defendants had a right to be present.

Recently in *Hughes v. State,* 288 Md. 216, 221-227, 421 A.2d 69, 72-75 (1980), and *Bunch v. State,* 281 Md. 680, 381 A.2d 1142 (1978), we reviewed the law concerning a criminal defendant's right to be present at every stage of the trial. It was pointed out that the right to be present is a common law right, is to some extent protected by the Fourteenth Amendment to the United States Constitution, and is guaranteed by Maryland Rule 724.[2] As recognized in this State, the right

---

2. Rule 724 provides:

"a. *When Presence Required.*

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules.

"b. *When Presence Not Required.*

A defendant need not be present:

1. At a conference or argument on a question of law;

2. When a *nolle prosequi* or stet is entered pursuant to Rule 782 (*Nolle Prosequi* and Stet);

3. At a reduction of sentence pursuant to Rule 773 (Sentence — Review) or Rule 774 (Sentence — Revisory Power of Court);

4. At any stage of the proceedings if the defendant is a corporation.

"c. *When Presence Waived.*

A defendant initially at trial waives his right to be present when:

1. He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his right to remain during trial; or

2. He engages in conduct to justify his being excluded from the courtroom."

is deemed "absolute," and a judgment of conviction ordinarily cannot be upheld if the record discloses a violation of the right. The right to be present is personal to the defendant and may not be waived by his attorney.[3]

The critical question in most cases involving a claimed denial of the right is whether the defendant's absence occurred during a "stage of the trial." Under our cases, whether a particular event occurred during a stage of the trial ordinarily involves a consideration of *when* the event occurred and *what* was involved. Normally, the right to be present does not attach until the process of impaneling the jury for a specific case begins, although there occasionally may be occurrences before that time during which there is a right to be present. *Hughes v. State, supra,* 288 Md. at 224-225.[4]

On the other hand, not everything which happens during and after the impaneling of the jury is deemed a stage of the trial requiring the defendant's presence. *Hughes v. State,*

---

3. With regard to the nature of the right as it is viewed in Maryland, *see,* in addition to the *Hughes* and *Bunch* cases, Brown v. State, 272 Md. 450, 457-460, 325 A.2d 557 (1974); Journigan v. State, 223 Md. 405, 408, 164 A.2d 896 (1960), *cert. denied sub nom.* Gardner v. Maryland, 365 U.S. 853, 81 S. Ct. 818, 5 L. Ed. 2d 817 (1961); Midgett v. State, 216 Md. 26, 36-38, 139 A.2d 209 (1958); LaGuardia v. State, 190 Md. 450, 458, 58 A.2d 913 (1948); Duffy v. State, 151 Md. 456, 472-477, 135 A. 189 (1926); Dutton v. State, 123 Md. 373, 389-390, 91 A. 417 (1914).

Some courts accord much less scope to the right than is recognized in this State, particularly in connection with communications between the court and jurors. *See, e.g.,* United States v. Baca, 494 F.2d 424, 428 (10th Cir. 1974); State v. Nevels, 192 Neb. 668, 223 N.W.2d 668, 669 (1974). For a discussion of the conflicting opinions among the lower federal courts in this regard, *see* 3 Wright, *Federal Practice and Procedure: Criminal* § 724 (1969).

4. Thus, communications between the court and a prospective juror, or the excusing of an individual prospective juror regardless of the reason, prior to the time a particular case is called for trial, has ordinarily not been deemed a stage of the trial at which the defendant has a right to be present. *See, e.g.,* Goldstein v. State, 220 Md. 39, 47, 150 A.2d 900 (1959); Pope v. United States, 287 F. Supp. 214, 219 (W. D. Tex. 1967), *aff'd,* 398 F.2d 834 (5th Cir. 1968), *cert. denied,* 393 U.S. 1097, 89 S. Ct. 886, 21 L. Ed. 2d 787 (1969); United States v. Baker, 266 F. Supp. 461, 464 (D.D.C. 1967), *remanded on other grounds,* 401 F.2d 958 (D.C. Cir. 1968); Welch v. Holman, 246 F. Supp. 971, 974 (M.D. Ala. 1965), *aff'd,* 363 F.2d 36 (5th Cir. 1966); Hopkins v. State, 49 Ala. App. 159, 269 So. 2d 175, 177 (Crim. App. 1972); North v. State, 65 So. 2d 77, 79 (Fla. 1953), *aff'd,* 346 U.S. 932, 74 S. Ct. 376, 98 L. Ed. 423 (1954); State v. Williams, 258 La. 801, 248 So. 2d 295, 296 (1971).

*supra,* 288 Md. at 225-226; *Bunch v. State, supra,* 281 Md. at 684-685, and cases there cited. The substance of what is involved must also be taken into account. Certain events, because of the nature of what occurs, are viewed as interruptions in the stages of the trial. For example, as pointed out in *Hughes,* 288 Md. at 225, periods when the court attends to administrative or "housekeeping" duties in connection with the trial are not ordinarily deemed "stages of the trial" for purposes of the right to be present. Discussions and an agreement during a trial recess, between the trial judge and counsel concerning procedures for the introduction of photographic evidence, were held not to be a stage of the trial in *Brown v. State,* 272 Md. 450, 325 A.2d 557 (1974). Rule 724 itself delineates certain occurrences which are not deemed stages of the trial requiring the defendant's presence. Other occurrences which have not been considered stages of the trial, as well as some of those which have been held to be stages of the trial, are discussed in the *Hughes* and *Bunch* opinions.

The *Bunch* case involved a bench conference during the trial at which the judge and counsel discussed a note from a juror stating that the juror was biased, and the judge then decided whether the juror should be excused on the ground of bias. The defendant was not present during this discussion or the court's ruling at the bench conference. This Court reversed the conviction on the ground that, under the circumstances, the bench conference was a trial stage at which the defendant had a right to be present. Pointing to the language of Rule 724 which expressly includes "the impaneling of the jury" as a stage of the trial, we held that an occurrence during the impaneling of the jury or subsequent thereto "involving a determination of whether a juror should be excused for *bias,*"was a stage of the trial requiring the defendant's presence. 281 Md. at 687, emphasis added.[5]

---

5. Of course, the mere fact that the initial communications between the court and a juror, relating to the juror's possible bias or prejudice, may have taken place outside of the defendant's presence, does not violate the defendant's right to be present as long as the matter is then considered in the defendant's presence and the court's ruling is based upon what transpired on the latter occasion. *See* State v. LaPierre, 39 N.J. 156, 188 A.2d 10,

In reaching our conclusion in *Bunch* regarding the disqualification of a juror for bias, we traced the history of the clause in Rule 724 which provides that "the impaneling of the jury" is a stage of the trial. We pointed out (281 Md. at 686-687) that the clause was ultimately based upon *Hopt v. Utah,* 110 U.S. 574, 4 S. Ct. 202, 28 L. Ed. 262 (1884), and was intended to embody the holding of that case. In *Hopt,* the Supreme Court held that proceedings during the impaneling of the jury, involving challenges to prospective jurors on the ground of bias, constituted a stage of the trial requiring the defendant to be personally present. The Supreme Court's decision in that case was based on the defendant's right to a jury which was not biased or prejudiced. The Court reasoned (110 U.S. at 578, emphasis supplied):

> "The prisoner is *entitled to an impartial jury* composed of persons *not disqualified* . . ., and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court . . . in the selection of jurors. The necessities of the defense may not be met by the presence of his counsel only. . . ."

As indicated by the Supreme Court in *Hopt,* the right to be personally present during the selection of jurors is designed to implement the right to "an impartial jury composed of persons not disqualified." The defendant may be able to aid his counsel and the court in the selection of impartial jurors. The purpose of the right to be present, in the context of juror selection, relates solely to jury impartiality and the disqualification of prospective jurors. It would not further this purpose to extend the right to communications involving the personal hardship of a juror to serve. The question of a prospective juror's ability to serve because of personal hardship has no direct relation to his impartiality or whether he should be disqualified in that case.

---

18-19, *cert. denied sub nom.* Bisignano v. New Jersey, 374 U.S. 852, 83 S. Ct. 1920, 10 L. Ed. 2d 1073 (1963).

Moreover, unlike the matter of juror disqualification as analyzed in *Hopt v. Utah, supra,* the personal presence of the defendant can add little or nothing to the determination of whether a prospective juror should be excused for personal hardship. This question does not implicate the interests of the defendant. Instead, the interests to be balanced are those of the prospective juror and the administration of the court system. The trial judge must weigh the degree of hardship or inconvenience, as well as any other circumstances relating to the prospective juror's personal reasons for wanting to be excused, against the effect upon the administration of the court and the statutory obligation of every registered voter to serve when summoned as a juror.[6] Whether or not the defendant desires to have the individual serve is irrelevant to the question of excusing the prospective juror for personal hardship.

Finally, in many cases like the present one, when during the jury impaneling process trial courts have excused or declined to excuse prospective jurors for hardship or similar reasons, the absence of the defendant during the occurrence has not been deemed reversible error. *See, e.g., United States v. Calaway,* 524 F.2d 609, 615-616 (9th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S. Ct. 1462, 47 L. Ed. 2d 733 (1976) (personal hardship of prospective jurors to serve because of anticipated length of the trial); *United States v. Houlihan,* 332 F.2d 8, 12-13 (2d Cir. 1964), *cert. denied,* 379 U.S. 828, 85 S. Ct. 56, 13 L. Ed. 2d 37 (1964) (communications between the court and a prospective juror employed as a nurse by a heart patient who objected to her serving because of the contemplated length of the trial); *United States v. Woodner,* 317 F.2d 649, 651-652 (2d Cir. 1963), *cert. denied,* 375 U.S. 903, 84 S. Ct. 192, 11 L. Ed. 2d 144 (1963) (similarly involved personal hardship to serve in light of the anticipated length of trial); *Frances v. State,* 262 Ind. 353, 316 N.E.2d 364, 365 (1974) (prospective juror had to appear in another court to answer a criminal charge); *Upshaw v. State,* 231 Miss. 158, 94 So. 2d 337, 340 (1957)

---

6. Maryland Code (1974, 1980 Repl. Vol., 1980 Cum. Supp.), § 8-102 (b) of the Courts and Judicial Proceedings Article.

(prospective juror's child had become ill and his presence was required at home); *State v. Phillips,* 508 S.W.2d 240, 242-243 (Mo. App. 1974) (death in juror's immediate family); *State v. Savan,* 148 Or. 423, 36 P.2d 594, 598, 601 (1934) (prospective juror had an important business engagement).[7]

The defendants argue that, with regard to those prospective jurors whose requests to be excused on hardship grounds were denied by the trial court, a matter of bias or prejudice was involved and that, therefore, the defendants had a right to be present. The defendants assert that such jurors may become angry because of the failure to excuse them, that they may be prejudiced against a party believed to be "wasting time during the trial," and that they may be "unwilling to take the time necessary to fairly and fully deliberate on the facts and law of the case."

The defendants cite no case, and we are aware of none, upholding their theory. In addition, the theory is constructed entirely upon speculation. Moreover, even if there were some merit in defendants' theory, it would not be the communication between the court and the prospective juror concerning hardship, or the court's decision, which would involve bias or prejudice. Instead, the communication and the decision would involve only the matter of hardship to serve. Any possible bias or prejudice on the part of the prospective juror would occur afterwards, as a result of the court's decision. The time to explore the possibility of bias or prejudice on such a ground is during the voir dire questioning of the prospective jurors who were not excused, to determine if any should be disqualified for cause. Under our holding in *Bunch v. State, supra,* the defendant does have a right to be present during that stage.[8]

---

7. After the impaneling of the jury, the absence of the defendants from proceedings involving the excusing of jurors on hardship grounds has been held to be reversible error under certain circumstances. *See, e.g.,* United States v. Gay, 522 F.2d 429 (6th Cir. 1975); State v. Smith, 44 Kan. 75, 24 P. 84 (1890).

8. In the instant case, after fifteen jurors were excused on hardship grounds and fourteen were not, the voir dire questioning of the prospective jurors, to determine disqualification for cause, took place in the defendants' presence. During the questioning, none of the remaining veniremen indicated that he would be unable to fairly and impartially decide the case because of anger over the court's earlier refusal to excuse him.

In sum, when communications between the court and jurors or prospective jurors, and determinations of the court, during and after the process of impaneling the jury for a particular criminal case, relate to juror impartiality or disqualification, the occurrences constitute a stage of the trial at which the defendant has a right to be personally present.[9] On the other hand, when the court's communications with jurors or prospective jurors and determinations concerning the excusing of jurors or prospective jurors are unrelated to juror impartiality or disqualification, the occurrences ordinarily will be deemed interruptions in the trial at which the personal presence of the defendant is not required. Consequently, in the case at bar, the defendants had no right to be personally present during the court's examination of the prospective jurors concerning their ability to serve beyond their scheduled term and the court's rulings on the hardship excuses.[10]

*Judgment of the Court of Special Appeals affirmed.*

*Petitioners to pay costs.*

---

**9.** It should be noted that the standard of juror impartiality or disqualification may be somewhat broader than direct bias or prejudice for or against the prosecution or the defendant. For example, in Commonwealth v. Robichaud, 358 Mass. 300, 264 N.E.2d 374 (1970), it was held that communications between the court and three prospective jurors concerning the alleged misconduct of the jurors in discussing the case was a stage of the trial requiring the defendant's presence. In Crow v. State, 89 Tex. Crim. 149, 230 S.W. 148 (1921), some of the jurors but not all had been selected; two of the jurors already selected objected to serving with a third juror who had been selected; the trial judge dismissed the third juror when the defendant was absent; and the appellate court held that the trial court erred in taking this action outside of the defendant's presence. Lowdermilk v. State, 186 So. 2d 816 (Fla. Dist. Ct. App. 1966), held that the court's examination of a juror concerning an attempted bribe, out of the defendant's presence, was reversible error.

**10.** A second issue presented by the defendants to this Court is that the trial court erred in refusing to excuse fourteen of the prospective jurors claiming hardship. The basis for this argument is the same speculative theory previously advanced, namely that the jurors might have been angry when they were not excused for hardship. The trial court quite properly left the matter for exploration during the voir dire questioning of these fourteen jurors to determine if they should be disqualified for cause. As previously mentioned, nothing during that voir dire questioning suggested that the disposition of the jurors to consider the case fairly and impartially was affected by the rulings on their requests to be excused. Under the standards set forth in our cases for excusing jurors for cause, the trial court did not err. *See* King v. State, 287 Md. 530, 535, 414 A.2d 909 (1980), and cases there cited.